*617 OPINION.
MoRRis:
The taxpayer relies on the letter of January 9, 1925, as the notice of determination of a deficiency by the Commissioner which gives it the right to appeal to the Board as to the year 1918 as well as 1919, and argues that this was a notice of final determination by the Commissioner. A chronicle of the events preceding this letter is set forth fully in the findings of fact. The taxpayer was notified on. January 24, 1924, of a proposed deficiency and of its right to appeal to the Commissioner in accordance with the provisions of section 250 (d) of the Revenue Act of 1921, within 30 days. No appeal was filed until March 10, 1924, and on the following day a claim in abatement was filed. Nothing further happened until May 21st, when the appeal was returned to the taxpayer because it was not executed in conformity with Treasury Decision 3492. Thereupon, a corrected appeal was filed on May 29, 1924. The claim in abatement and the appeal related to both the years 1917 and 1918. On June 3, 1924, the taxpayer was informed a conference thereon had been arranged for June 26, 1924,’ and the conference was duly held. . By accepting the appeal after the expiration of 30 days from January 24, and considering the taxpayer’s claims thereon, the Commissioner waived the 30-day requirement. On July 29, 1924, the taxpayer received a notice and demand for payment of the 1918 deficiency from the collector and thereupon submitted another claim in abatement for 1918. It does not appear when the assessment was made. On August 25, 1924, the letter set out in full in the findings was sent by the Commissioner. It states that the claims for both 1917 and 1918 had been examined and rejected and the reasons for the rejection are given. This was a decision of the taxpayer’s appeal under section' 250 (d). It does not appear that the Commissioner reconsidered the claims after that date or made any new determination, so that decision stands as the determination of the ■ Commissioner. The letters of November 24, 1924 and January 9, 1925, not only fail to show that the Commissioner reconsidered the case or made a redetermination, but each one states that the taxpayer’s claim for abatement of the 1918 deficiency can not be accepted. These letters do not mention 1917 and obviously refer to the second abatement claim for 1918. The action of the Commissioner in informing the taxpayer that this claim could not be accepted can not be construed as evidence of a reconsideration of the taxpayer’s claims, or of a redetermination of the deficiency. We therefore hold that • the Board has no jurisdiction to hear and determine the appeal as to the year 1918.
*618 Because of the approach of the effective date of prohibition, the taxpayer stopped brewing beer in 1919. It then commenced making near-beer. The testimony shows that thenceforth certain parts of the buildings and brewing plant were not used, but that in manufacturing near-beer the balance of the brewery was used in the same manner as before. The portion used, however, was operated in 1919 only to about 25 per cent of capacity, as measured by the quantity of beverage produced. In 1920, by the same measurement, such portion was operated to 60 per cent of capacity; but from then on the extent of use gradually diminished "until, in 1924, it was but a small fraction of the previous use. It is also shown that since 1918 thé ice-making plant has been used only to about 50 per cent of its capacity, owing to the fact that refrigeration is not required for near-beer as it was for real beer, and that the taxpayer could not sell to the public a quantity of ice greater than 50 per cent of the plant’s capacity.
The taxpayer advances the proposition that such use as was made of the plant subsequent to cessation of beer manufacture was for the purpose of increasing the salvage, and it is entitled therefore to an allowance for obsolescence, over the period from February 1, 1918, to December 31,1919, of the difference between the depreciated cost and the value in such use, i. e., the alleged salvage value. It is argued,- further, that all breweries ipso facto became obsolete with prohibition. These propositions are based on assumptions of fact which we are not warranted in making. The question is not, what effect prohibition had on the business of manufacturing and selling beer. There is no doubt about that. What we have to decide is its effect on the utility and value of the physical assets. If they were not as a matter of fact capable of other uses, prohibition rendered them obsolete. But we can not assume all brewery plants are similarly circumstanced in respect of utility for purposes other than the manufacture of prohibited beverages. The facts must be established in each case.
Obsolescence is defined as the state of becoming obsolete. Webster’s New Int. Dict.; Appeal of Columbia Malting Co., 1 B. T. A., 999. Obsolete is defined as meaning “ no longer in use; disused; ■neglected.” Webster’s Diet. If property is continued in use for several years after 1919, as the evidence shows a portion of this brewery plant was, how can it be said that that portion became obsolete in that year? The part used required no alteration or reconstruction for such use; it apparently was as equally well adapted for making near-beer as it was for making the other kind. The fact that it was not operated to full capacity is not evidence that it was then obsolete. In 1920 it produced 60 per cent of the quantity of beverage formerly manufactured. It is urged that the taxpayer *619 should not be made to suffer because it in effect attempted to increase the amount of salvage when it knew there was small chance of successful operation. This argument presupposes that the taxpayer was attempting only to realize salvage, a premise with which we do not agree. We must presume that the taxpayer’s officers were exercising their best business judgment and that in so doing they saw a reasonable prospect of a profitable business in near-beer. We can not credit them with power to prophesy in 1919 that the public would not take to near-beer. If that fact could have been foreseen, Would they have gone into the near-beer business? We think not. Because their expectations for profitable business were not realized, they can not now maintain that the plant was obsolete when they began making near-beer. In the Appeal of Columbia Malting Co., supra, we said:
In order that the taxpayer may be entitled to the obsolescence deduction in the years involved, there must have been substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and second, it must have been known, or believed to have been known, to a reasonable degree of certainty; under all the facts and circumstances, when that event would likely occur.
.Subsequent events may have demonstrated that the plant had become obsolete for near-beer manufacture, as well as for every other purpose, but we can not determine obsolescence in 1919 from what happened later. The evidence does not sustain the contention that the portion of the brewery used for making near-beer became obsolete at the close of 1919.
It appears that some parts of the brewery which were not used in making near-beer, such as the racking room, became obsolete in 1919, but there is not in evidence data which will enable us to find the amount of obsolescence of those parts.

The petition is dismissed as to the year 1918. The deficiency for 1919 is $2,1¡39.55. Order will be entered accordingly.